UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| MICHAEL CLEM, *in his capacity as the Personal Representative of the Estate of* KENNETH RAY THORNHILL, *deceased,* and AMANDA LUNDEBERG, *as next friend of* K.R.T. and C.L.T., *both minors* | § § § § § § | |
| V. | § § § | CIVIL ACTION NO. 1:17-cv-00522 |
| LIBERTY COUNTY, TEXAS | § | |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

Table of Contents ...................................................................................................................... 2

Nature of the Case ..................................................................................................................... 3

Parties ........................................................................................................................................ 3

Jurisdiction ................................................................................................................................. 4

Venue ......................................................................................................................................... 4

Conditions Precedent ................................................................................................................. 4

Factual Background ................................................................................................................... 4

    A.    Events of December 15, 2015 ..................................................................................... 4

    B.    The Subsequent Investigation ..................................................................................... 6

Causes of Action ........................................................................................................................ 7

    A.    Claims Under 42 U.S.C. § 1983 and Fourteenth Amendments to the
U.S. Constitution .......................................................................................................... 7

        i.    Unconstitutional Conditions of Confinement ............................................. 9

        ii.    Episodic Acts or Omissions ....................................................................... 11

    B.    Eighth Amendment Claims, in the Alternative ........................................................ 13

    C.    *Monell* Liability ....................................................................................................... 15

Survivorship & Wrongful Death Action ................................................................................. 16

Damages ................................................................................................................................... 17

Attorney's Fees and Costs ....................................................................................................... 18

Relief Requested ...................................................................................................................... 18

Jury Demand ............................................................................................................................ 18

Prayer ....................................................................................................................................... 18

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, MICHAEL CLEM, in his capacity as the personal representative of The Estate of KENNETH RAY THORNHILL, deceased, and AMANDA LUNDEBERG, as next friend of K.R.T. and C.L.T., both minors, ("Plaintiffs"), complaining of LIBERTY COUNTY, TEXAS ("Liberty County" or "the County") and for cause of action would respectfully show unto this Honorable Court as follows:

## I.   NATURE OF THE CASE

1. This is a civil action arising under the United States Constitution, particularly under the provisions of the Due Process Clause and the Fourteenth and, in the alternative, the Eight Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, seeking damages against Defendant for committing acts, under color of law, with the intent and for the purpose of depriving KENNETH RAY THORNHILL and Plaintiffs of rights secured under the Constitution and laws of the United States.

## II.   PARTIES

2. Decedent, KENNETH RAY THORNHILL, ("Kenneth"), was, at the time of the incident made the basis of this action, an individual in the custody of the Liberty County Sheriff's Department at the Liberty County Courthouse in Liberty County, Texas.

3. Plaintiff, MICHAEL CLEM, is a citizen of the United States currently residing is Harris County, Texas. MICHAEL CLEM is the personal representative of KENNETH RAY THORNHILL, deceased.

4. Plaintiff, AMANDA LUNDEBERG, as next friend of K.R.T. and C.L.T., both minors, is a citizen of the United States currently residing in San Jacinto County, Texas. K.R.T. and C.L.T.

are the surviving sons of KENNETH RAY THORNHILL, Decedent. Plaintiff Lundeberg, as next friend of K.R.T. and C.L.T., brings this suit for the benefit of all wrongful death beneficiaries, including T.M., a minor. Plaintiff Lundeberg is the mother of K.R.T. and C.L.T.. T.M. is Decedent's daughter from a prior relationship. On information and belief, T.M.'s maternal grandmother is her legal guardian.[1]

5. Defendant, LIBERTY COUNTY, TEXAS is a governmental entity located within the State of Texas. Defendant has appeared and filed an answer in this case.

### III. JURISDICTION

6. This action is brought pursuant to 42 U.S.C. §§ 1983 and the Fourteenth and, in the alternative, the Eight Amendments to the United States Constitution. The Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1343.

### IV. VENUE

7. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the acts, events or omissions giving rise to this claim occurred in Liberty County, Texas, which falls within the United District Court for the Eastern District of Texas, Beaumont Division.

### V. CONDITIONS PRECEDENT

8. All conditions precedent have been performed or have occurred.

### VI. FACTUAL BACKGROUND

**A.  The Events of December 15, 2015**

9. On the morning of December 15, 2015, a jury found Kenneth guilty of Possession of a Controlled Substance (Penalty Group 1) with Intent to Distribute in an amount greater than four

---

[1] As articulated in the Parties' Joint Motion for Leave to Amend Plaintiffs' First Amended Complaint [Doc. No. 15], which is incorporated herein by reference, the Parties request that the Court issue an order notifying T.M.'s legal guardian that this suit has been filed and given her an appropriate time to appear. In the event T.M.'s guardian does not timely appear; the Parties will file a motion requesting an attorney ad litem be appointed to represent T.M.'s interests.

4

grams and less than 200 grams, in the 75th Judicial District Court, Liberty County, Texas.

10. This offense is a second-degree felony and carries a potential range of punishment between two and 20 years imprisonment. *See* TEX. HEALTH & SAFETY CODE § 481.115; TEX. PENAL CODE § 12.33.

11. After the jury found him guilty of the offense, the judge took a recess for lunch and announced that sentencing would begin that afternoon.

12. Kenneth was then taken into custody, pending sentencing, by the court's baliff, Deputy John Davis ("Deputy Davis"), and the head of courthouse security, Deputy Kim Rodden ("Deputy Rodden").

13. Prior to this, Kenneth had been out on bond prior to and during the trial.

14. Deputy Davis and Deputy Rodden are licensed peace officers in the State of Texas and, at the time, were employed by Liberty County, specifically the Liberty County Sherriff's Department, as deputy sheriffs. In 2015, the Liberty County Sherrif's Department held Deputy Davis' and Deputy Rodden's commissions.

15. After taking Kenneth into custody, Deputy Davis took Kenneth to a "holding cell" in the Liberty County Courthouse around 11:50 a.m. Exhibit "A" (Incident Report submitted to the Texas Commission on Jail Standards by Don Neyland).

16. The cell is located on the 3rd floor of the Liberty County Courthouse. The cell was located at the end of a long hallway and is completely isolated from the rest of the courthouse and other personnel.[2]

17. Deputy Davis and Deputy Rodden placed Kenneth into the holding cell and left to go get lunch. They left Kenneth alone and completely isolated in the holding cell with nothing to think

---

[2] The 3rd floor of the Liberty County Courthouse has been remodeled and reconfigured since the events giving rise to this case.

about except the lengthy prison sentence he was facing.

18. Prior to the facts giving rise to this suit, it was the policy and/or common practice for individuals in custody or taken into custody to be placed in the isolated holding cell and left alone during breaks. Further, on information and belief, Liberty County was notified by its insurance carrier not to use the holding cell.

19. Around 1:00 p.m., Deputy Rodden went back to the holding cell to get Kenneth. *See id*.

20. Deputy Rodden found Kenneth hanging by his shirt in the cell—one end of the shirt was tied to the top of the cell and the other was around Kenneth's neck. *See id*.

21. Deputy Rodden tried to lift Kenneth up. Eventually, Deputy Rodden and others got Kenneth down but it was too late and Kenneth was declared deceased shortly thereafter. The cause of death was determined to be suicide. *See id*.

22. Later that afternoon, the Liberty County District Attorney's Office dismissed the charges against Kenneth and no conviction was recorded.

**B.     The Subsequent Investigation**

23. Shortly after Kenneth's death, the Texas Commission on Jail Standards ("TCJS") issued a report on December 17, 2015. Exhibit "B" (Texas Commission on Jail Standards—Jail Inspection Report).

24. TCJS found that the use of the holding cell violated safe jail standards in three ways. *Id*.

25. First, TCJS found that "[t]he county failed to disclose the existence of courthouse cells and no letter of occupancy had been issued for use of the jail commission." *Id*. Thus, Deputy Davis and Deputy Rodden placed Kenneth into a cell that was not certified to be used by or even disclosed to TCJS, a clear violation of TCJS's standards. *See id*.

26. Second, TCJS concluded that "[i]nformation provided to the commission staff revealed

the courthouse holding cells were not equipped with intercom devises to provide two way communication." *Id*.

27. Third, TCJS found that "[d]ocumentation was not being maintained to insure 30 minute face to face visual checks on inmates in the courthouse holding cells were being conducted as required by the minimum jail standards." *Id*. In other words, TCJS found that Liberty County was not doing proper 30 minute visual checks on persons placed in the cell, which is the bare minimum required by TCJS. *See id*. Indeed, Kenneth was left in the holding cell alone for at least an hour.

28. Further, Defendant's conduct is a direct violation of Title 37, Chapter 275, Rule 275.7 of the Texas Administrative Code, entitled "Supervision Outside the Security Perimeter—Court Holding Cells."[3] Specifically, the law provides that "[t]he sheriff/operator shall have an established procedure for documented, face-to-face observation of all inmates no less than once every 30 minutes." 37 Tex. Admin. Code § 275.7 (2018). Further, "[w]here required, there shall be two-way voice communication capability between inmates and jailers, licensed peace officers, or bailiffs at all times." *Id*.

### VII. CAUSES OF ACTION

29. Plaintiffs hereby adopt, incorporate, restate and re-allege paragraphs 1 through 28, inclusive, with regard to all causes of action.

**A.**  **Claims Under 42 U.S.C. §1983 and Fourteenth Amendment to the U.S. Constitution**

30. Defendant Liberty County, acting under color of law and acting pursuant to the customs and policies of Liberty County deprived Kenneth of rights and privileges secured to him by the Due Process Clause and the Fourteenth Amendment to the United States Constitution and by

---

[3] The current version of Title 37, Section 275.7 of the Texas Administrative Code went into effect January 1, 2014. *See* 2013 TX REG TEXT 339462. Accordingly, the law had been in effect for almost 2 years prior to Kenneth being placed in the holding cell in the Liberty County Courthouse.

7

other laws of the United States. Defendant failed to provide for Kenneth's basic needs by failing to provide safe and proper confinement and not providing for his medical needs, in violation of 42 U.S.C. § 1983 and related provisions of federal law, and in violation of the cited constitutional provisions.

31. Deputy Davis was employed by Liberty County and was acting within the scope of his employment and under color of statutes, ordinances, rules and regulations, customs, and usage of Liberty County. At the time of the incident, Deputy Davis assumed his role as a Deputy Sherriff and bailiff for Liberty County.

32. Deputy Rodden was employed by Liberty County and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of Liberty County. At the time of the incident, Deputy Rodden assumed her role as a Deputy Sherriff and head of courthouse security for Liberty County.

33. Because the charges were dismissed on December 15, 2015, no conviction was recorded, and no sentence was imposed. Therefore, Kenneth was still a considered a pre-trial detainee. *See Graham v. Connor*, 490 U.S. 386, 392-93 & n. 6 (1989); *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979); *Duvall v. Dallas Cty.*, 631 F.3d 203, 206-07 (5th Cir. 2011); *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (citing *Graham*, 490 U.S. at 392-93 & n. 6) ("The Eight Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction'"); *accord Edwards v. Northampton Cty.*, 663 F. App'x 132, 134 (3d Cir. 2016). Accordingly, Plaintiffs assert a claim under the Fourteenth Amendment and the Due Process Clause concerning Kenneth's conditions of confinement.

34. Kenneth had a right, secured by the Fourteenth Amendment and the Due Process Clause, to be secure in his basic human needs, including medical care and safety, free from conditions of

confinement that were not reasonably related to a legitimate governmental objective, the right to be free from indifference to his medical and mental health needs, the right to be free from any punishment before conviction and sentencing, and/or to be free from having his life taken while in confinement without due process of the law.

      **i.    Unconstitutional Conditions of Confinement**

35. Plaintiffs assert that Defendant Liberty County, through its policies, practices, customs, or procedures, violated Kenneth's substantive and procedural due process rights under the Fourth Amendment as a detainee by confining Kenneth in a dangerous and inhumane manner at the Liberty County Courthouse and imposing unconstitutional conditions of confinement, which deprived him of his basic human needs for safety, security, and medical care. Liberty County's policies, practices, and customs, includes acts by Liberty County Sheriff, Bobby Rader ("Sheriff Rader"), who is a policymaker for Liberty County.[4] These violations ultimately led to Kenneth's death.

36. Defendant Liberty County implemented its policies, customs and practices with deliberate, callous and conscious indifference to the constitutional rights of Kenneth and other detainees.

37. In order to state a due process claim against Liberty County based upon Kenneth's conditions of confinement, Plaintiffs must demonstrate that:

    a.    A rule or restriction; the existence of an identifiable intended condition or practice; or that a jail official's acts or omissions were sufficiently extended or pervasive;

    b.    That the rule, restriction, condition, practice or the jail official's act or omission was not reasonably related to a legitimate governmental objective; and

---

[4] *Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 527 (5th Cir. 2006) ("It is well-established, however, that a single decision by an official can be grounds for section 1983 liability where the decision was rendered by an individual with 'final policy making authority.'") (citing *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989)).

    c.    That the rule, restriction, condition, practice or the jail official's act or omission in a violation of Kenneth's constitutional rights.[5]

38.    Plaintiffs plead that the deprival of Kenneth's due process rights was a result of the conditions of his confinement. Therefore, Plaintiffs are not required to show deliberate indifference on the part of Liberty County or its employees because the intent exists in the form of the condition, practice, rule, or restriction itself.[6]

39.    Facts supporting each of the elements of a § 1983 claim listed above are found in the "**Factual Background**" applicable to all claims, but may be summarized as follows:

    a.    A policy, custom, or practice of placing persons in custody or taken into custody into the holding cell at the Liberty County Courthouse, which was isolated, not approved for use by the TCJS, and had no TCJS certificate of occupancy, a fact of which the Sheriff was aware;

    b.    A policy, custom, or practice of not providing persons placed in the holding cell with access to a two-way communication device in violation of TCJS standards of which the Sheriff was aware;

    c.    A policy, custom, or practice of failing to properly monitor persons placed in the holding and to ensure that they were checked on every 30 minutes as required by TCJS's minimum standards and that such checks were properly documented in written form, a fact of which the Sheriff was aware;

    d.    A failure to adopt and implement an established procedure for documented, face-to-face observation of all persons placed in holding cell no less than every thirty minutes, as required by Title 37, Chapter 275, Rule 275.7 of the Texas Administration Code, a law of which the Sheriff was or should have been aware; and

    e.    Failure to properly train, hire, control, and supervise employees, specifically the failure to train Sherriff's deputies responsible for the handling of persons in custody, to assess and screen for suicide risks.

40.    Moreover, Sheriff Rader, a policymaker for Liberty County, was responsible for

---

[5] *Duvall v. Dallas Cty.*, 631 F.3d 203, 207 (5th Cir. 2011) (citing *Hare v. City of Corinth*, 74 F.3d 633, 654 (5th Cir. 1996) (*en banc*)).

[6] *Id*. ("In cases . . . that are grounded in unconstitutional conditions of confinement, the plaintiff need only show that such a condition, which is alleged to be the cause of a constitutional violation, has no reasonable relationship to a legitimate governmental interest.").

establishing a procedure for documented, face-to-face observation of all persons placed in the holding cells in the Liberty County Courthouse. 37 TEX. ADMIN. CODE § 275.7. As previously stated, this law became effective January 1, 2014. Sheriff Rader had actual or constructive knowledge of this law and failed to implement the required procedures. Further, Sheriff Rader had actual or constructive knowledge that the holding cells in the Liberty County Courthouse did not have a valid TCJS certificate of occupancy.

41. These actions by Liberty County subjected Kenneth to confinement under constitutionally inadequately conditions such as:

    a. Confinement conditions that are not in compliance with minimum jail standards to ensure his safety, security, and access to medical care;

    b. Confinement conditions that are in violation of Texas law regarding the use of court holding cells; and

    c. Confinement conditions that failed to ensure that persons in custody are properly monitored and have access to emergency services.

42. Kenneth had rights under the Fourteenth Amendment and the Due Process Clause to be secure in his basic human needs, including safety, security, and medical care; the right to be free from conditions of confinement that were not reasonably related to a legitimate governmental objective; the right to be free from any punishment prior to conviction and sentencing; and the right to be free from having his life taken while in confinement without due process of the law.

43. As previously noted the existence of a condition, practice, rule, or restriction, satisfies any intent requirement.

    ii. **Episodic Acts or Omissions**

44. In the alternative, while Plaintiffs contend that this is a conditions-of-confinement case, in the event the Court considers this to be an episodic act or omissions case in whole or in part, the acts of Deputies Davis and Rodden and Liberty County were sufficiently extended or

pervasive to amount to deliberate indifference.[7]

45. The elements of an episodic-act-or-omissions claim under the Fourteenth Amendment are:

    a. The plaintiff was exposed to a substantial risk of harm;

    b. The defendant displayed deliberate indifference to the risk; and

    c. The deliberate indifference harmed the plaintiff.[8]

46. Based upon their prior experience, Deputies Davis and Rodden, who had both been with the Liberty County Sherriff's Office since 2001, were subjectively aware that the holding cell was isolated and lacked two-way communications. Further, they were subjectively aware that Kenneth had just been found guilty of a serious offense and was likely facing at lengthy prison sentence. By placing him into the holding, in accordance with the policy, custom, and/or practice, the Deputies' conduct exposed Kenneth to a substantial risk of serious harm.

47. In short, Deputies Davis and Rodden chose to put Kenneth in the holding cell and to leave him alone for over an hour, knowing that Kenneth had just been found guilty of a serious offense and was likely looking at lengthy prison sentence. Further, the Deputies failed to check on him every 30 minutes as required under minimum jail standards, which was known to the deputies. Thus, Deputies Davis and Rodden had subjective knowledge of a substantial risk of serious harm to Kenneth, but responded with deliberate indifference.[9]

48. For years prior to this incident, bailiffs, courthouse security, and/or deputy sheriffs routinely placed persons into the holding cell in the Liberty County Courthouse. Thus, it was a policy, practice, and/or custom of Liberty County to place persons into the isolated holding cell

---

[7] *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999); *see Shepherd v. Dallas Cty.*, 591 F.3d 445, 453 n.1 (5th Cir 2009) (noting that a plaintiff can plead both that a condition of confinement claim and an episodic-acts-or-omissions claim).
[8] *Olabisiomotosho*, 185 F.3d at 526.
[9] *Id*.

that was not certified for occupancy by TCJS, lacked two-way communication equipment, and lacked proper monitoring and monitoring procedures. Further, as noted above, it is believed that the insurance policy for the County specifically included warnings not use the holding cell. Therefore, in the event this is an episodic act or omission case, Liberty County is still liable for the conduct of Deputies Davis and Rodden because their acts resulted from Liberty County's policies and customs that were adopted or maintained with objective indifference to the rights of Kenneth and others.[10]

49. As previously stated, Sheriff Rader, a policymaker for Liberty County, was responsible for establishing a procedure for documented, face-to-face observation of all persons placed in the holding cells in the Liberty County Courthouse. 37 Tex. Admin. Code § 275.7. This law became effective January 1, 2014. Sheriff Rader had actual or constructive knowledge of this law and failed to implement the required procedures. Further, Sheriff Rader had actual or constructive knowledge that the holding cells in the Liberty County Courthouse did not have a valid TCJS certificate of occupancy. Accordingly, Sheriff Rader's failure to comply with the law amounts to deliberate indifference by the County.

50. The deliberate indifference of Liberty County harmed Kenneth and led to him being able to take his own life.

**B.     Eight Amendment Claims, in the Alternative**

51. In the event that the Court finds that Kenneth was a convicted person, Plaintiff's plead, in the alternative, that Defendant Liberty County violated his rights under the Eight Amendment.

52. The elements of an Eight Amendment claim are:

    a.     The plaintiff was exposed to a substantial risk of harm;

    b.     The defendant displayed deliberate indifference to the risk; and

---

[10] *Id.* (citing *Hare*, 74 F.3d at 649 n.14).

    c.    The deliberate indifference harmed the plaintiff.[11]

53.    The Eighth Amendment's prohibition of "cruel and unusual punishment" imposes a duty on prison officials to "provide humane conditions of confinement."[12] Liberty County officials are imposed the duty to ensure that persons received adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of prisoners.

54.    As stated previously, Liberty County failed to provide humane conditions of confinement for Kenneth by placing him in an isolated cell alone for over an hour with no source for two-way commination and not conducting visual checks every 30 minutes, which also lacked a valid TCJS certificate of occupancy.

55.    These conditions "posed a substantial risk of harm" to Kenneth or anyone else who was placed in the holding cell at the Liberty County Courthouse.[13]

56.    Deputies Davis and Rodden acted with deliberate indifference to the health and safety of Kenneth by placing him into an isolated cell, alone, for over an hour after he had just been found guilty of a serious offense and was anticipating a lengthy prison sentence. Further, by December 2015, the Liberty County, through its policymakers, knew the risks of placing persons in the holding cell but choose to continue to do so.

57.    As previously stated, Sheriff Rader, a policymaker for Liberty County, was responsible for establishing a procedure for documented, face-to-face observation of all persons placed in the holding cells in the Liberty County Courthouse. 37 Tex. Admin. Code § 275.7. This law became effective January 1, 2014. Sheriff Rader had actual or constructive knowledge of this law and failed to implement the required procedures. Further, Sheriff Rader had actual or

---

[11] *Olabisiomotosho*, 185 F.3d at 526.

[12] *Hinojosa v. Livingston*, 807 F.3d 657, 664-65 (5th Cir. 2015); *Victoria W. v. Larpenter*, 369 F.3d 475 (5th Cir. 2004) (noting that the Eight Amendment encompasses "broad and idealistic concepts of dignity, civilized standards, humanity, and decency").

[13] *Hinojosa*, 707 F.3d at 664-65 (citing *Farmer v. Brennan*, 515 U.S. 824, 834 (1994).

constructive knowledge that the holding cells in the Liberty County Courthouse did not have a valid TCJS certificate of occupancy. Accordingly, Sheriff Rader's failure to comply with the law amounts to deliberate indifference by the County.54. These conditions of confinement violated Kenneth's Eight Amendment rights to be free from "cruel and unusual punishment" and were a direct and proximate cause of his death.

**C.** *Monell* **Liability**[14]

58. Liberty County is liable based on its policies, customs, and/or practices.

59. The elements of a § 1983 (*Monell*) claim against a municipality are:

   a. An official policy or custom existed;

   b. A policymaker for the County knew or should have known about the policy or custom;

   c. The policymaker was deliberately indifference; and

   d. The policy or custom was the moving force leading to the constitutional violation.

60. Liberty County had a policy, custom, and/or practice of using the holding cell in the Liberty County Courthouse despite the fact that it was not approved by TCJS, had no TCJS certificate of occupancy, lacked two-way communication equipment, and was not being monitored to ensure that face to face visual checks were occurring at least every 30 minutes.

61. As previously stated, for years prior to this incident, bailiffs, courthouse security, and/or deputy sheriffs routinely placed persons into the holding cell in the Liberty County Courthouse.

62. Liberty County and its policymakers knew or should have known of these unconstitutional policies, practices, customs, and procedures, which were occurring in the Liberty County Courthouse. Further, Sheriff Rader, as the chief law enforcement officer for the

---

[14] Plaintiffs have pleaded facts to support their claims against Liberty County as part of their Fourteenth and Eight Amendment claims. Nevertheless, in an abundance of caution, Plaintiffs will restate the elements of their *Monell* claim against Liberty and also incorporate all previously plead facts and claims listed above.

County, the official responsible for housing prisoners in the County, and a policymaker for the County, undoubtedly knew or should have known that the holding cell had not been identified to the TCJS, did not have a certificate of occupancy, did not have two-way communication equipment, and no documentation existed showing 30 minute monitoring was occurring. Further, Sheriff Rader failed to comply with Texas law concerning the use of court holding cells, specifically the relevant TCJS rules and regulations, including Title 37, Chapter 257, Rule 275.7 of the Texas Administrative Code.

63. Liberty County was deliberately indifference by maintaining a policy, custom, or practice that allowed the holding cells, which were not in compliance with TCJS standards to be used. These policies, customs, or practices concerning conditions of confinement, specifically the continued use of the holding cell, create a presumed intent in the form of the condition or practice itself.[15] Further, Liberty County policymakers continued to allow the use holding cell while knowing it was unsafe to do so.

64. As previously stated, Kenneth's constitutional rights under the Fourteenth Amendment or, alternatively, under the Eight Amendment, were violated and Liberty County's unconstitutional policies, practices, customs, and procedures, were the moving force behind those violations.

## VIII. SURVIVORSHIP AND WRONGFUL DEATH ACTION

65. Plaintiffs hereby adopt, incorporate, restate and re-allege paragraphs 1 through 64, inclusive, with regard to all causes of action.

66. Michael Clem is the personal representative of the Estate of Kenneth Ray Thornhill, deceased, and is entitled to bring a survivor's claim. *See* 42 U.S.C. § 1988; TEX. CIV. PRAC. & REM. CODE § 71.021.

---

[15] *Duvall*, 631 F.3d at 207.

67.     K.R.T. and C.L.T. are the surviving minor sons of Kenneth Ray Thornhill. They are entitled to assert wrongful death claims, through their next friend, Amanda Lundeberg. *See* 42 U.S.C. § 1988; TEX. CIV. PRAC. & REM. CODE § 71.004.[16]

68.     T.M. is purportedly a surviving minor daughter of Kenneth Ray Thornhill.

69.     Amanda Luneberg, as next of friend of K.R.T and C.L.T., brings a claim on behalf of all wrongful death beneficiaries, including K.R.T., C.L.T., and T.M.. Although Plaintiff Lundeberg is bringing a claim on behalf of all wrongful death beneficiaries of Kenneth Ray Thornhill, she is not T.M.'s next of friend. On information and belief, T.M.'s maternal grandmother is her legal guardian. Thus, the single action requirement of the Texas wrongful death statute is satisfied.[17]

## IX. DAMAGES

70.     Plaintiffs hereby adopt, incorporate, restate and re-allege paragraphs 1 through 67, inclusive, with regard to all causes of action.

71.     As a result of Defendant's constitutional violations, Plaintiffs have suffered serious and substantial damages and injuries, for which they request the award of the following categories of damages,

> Wrongful Death Claims by Amanda Lundeberg, next friend of K.R.T. and C.L.T., minors and surviving sons of Kenneth Ray Thornhill, deceased, and on behalf of all wrongful death beneficiaries:
>
> a.     Mental anguish, including emotional pain and distress, torment and suffering that Plaintiffs have separately experienced due to the death of their father;
>
> b.     The pecuniary loss of care, maintenance, support, services, advise, counsel and

---

[16] *See Aguillard v. McGowen*, 207 F.3d 226, 231 (5th Cir. 2000) (stating that "[p]ursuant to 42 U.S.C. § 1988, we must look to the state wrongful death statute to determine who has standing to bring a wrongful death claim under § 1983").

[17] Under the single action rule applicable to the Texas wrongful death statute, "all persons entitled to recover under the statute must be a party to the same suit or the pleading must aver that the action is brought for the benefit of all of those entitled to recover." *Estate of Alex through Coker v. T-Mobile US, Inc.*, 313 F. Supp. 3d 723, 733 (N.D. Tex. 2018); *see Avila v. St. Lukes Lutheran Hosp.*, 948 S.W.2d 841, 850 (Tex. App.—San Antonio 1997, pet. denied).

     reasonable contributions of pecuniary value that Plaintiffs have sustained and lost in reasonable probability due to the death of their father;

c.     The loss of society and companionship representing the positive benefits flowing from the love, comfort, companionship and society that Plaintiffs have sustained in reasonable probability due to the death of their father;

Survivorship Claims by Michael Clem, in his capacity as personal representative of the Estate of Kenneth Ray Thornhill, deceased:

d.     Physical Pain and suffering endured by Kenneth Ray Thornhill throughout his confinement and leading up to his impending death recoverable by the estate;

e.     Mental anguish, including emotional pain and distress, torment, and suffering that Kenneth Ray Thornhill endured during his confinement leading up to his death recoverable by the estate;

f.     Burial expenses incurred by Kenneth Ray Thornhill's estate resulting from his death; and

g.     These damages should be separately assessed by the jury with regard to each individual Plaintiff. A fair and impartial jury should listen to the evidence and award an amount for each element of damages that is just and fair based on the evidence.

## X. ATTORNEY'S FEES AND COSTS

72.     Plaintiffs hereby adopt, incorporate, restate and re-allege paragraphs 1 through 69, inclusive, with regard to all causes of action.

73.     Plaintiffs are entitled to an award of attorney's fees and costs under its 42 U.S.C. § 1983 pleadings. *See* 42 U.S.C. § 1988.

## XI. RELIEF REQUESTED

74.     The preceding factual statements and allegations are incorporated by reference.

75.     For these reasons, Plaintiffs pray for judgment against Defendant for the following:

a.     Actual damages;

b.     Pre-judgment and post-judgment interest;

c.     Attorney's fees and expenses;

  d.  Costs of Court;

  e.  Permanent injunctive relief; and

  f.  Such other and further relief as the Court deems just and equitable.

## XII. JURY DEMAND

76. Plaintiffs respectfully demand trial by jury and has tendered the appropriate fee for the same.

## XII. PRAYER

WHEREFORE, Plaintiffs respectfully request Defendant to be cited to appear and answer herein, and that upon final trial hereof, the Court award the relief against Defendant.

Plaintiffs further respectfully request that they be afforded all due expediency within the discretion of this Honorable Court to facilitate the preservation of evidence, to demonstrate that such unconscionable conduct will not be tolerated in a civilized society, and to ensure that justice may be served.

         Respectfully submitted,

         **THE BERNSEN LAW FIRM**

         **David E. Bernsen**
         Texas Bar No. 02217500
         dbernsen@bernsenlaw.com
         **Christine L. Stetson**
         Texas Bar No. 00785047
         cstetson@bernsenlaw.com
         420 N. MLK, Jr. Pkwy
         Beaumont, Texas 77701
         409/212-9994 – Telephone
         409/212-9411 – Facsimile

         **ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing document was served on the following counsel by mail, electronically and/or via facsimile on the 10th day of January, 2019:

Charles S. Frigerio
Hector X. Saenz
Law Offices of Charles S. Frigerio
Riverview Towers
111 Soledad, Suite 840
San Antonio, Texas 78205.

                  _____
                  Christine L. Stetson